UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-cv-62692-SMITH/Valle

CHARLES J. ADELSON,

    Plaintiff,

v.

BERKSHIRE LIFE INSURANCE
COMPANY OF AMERICA,

    Defendant.
_____/

## BERKSHIRE'S RENEWED MOTION FOR JUDICIAL NOTICE

Berkshire, pursuant to Fed. R. Evid. 201 and this Court's Order Resetting Trial (D.E. 167), respectfully renews its request that the Court take judicial notice at trial of certain adjudicative facts that are not subject to reasonable dispute, and states:

1. In the Court's Ruling on the Parties' Cross Motions for Summary Judgment (Doc. 157), the Court determined that "**the reason that Plaintiff's income dropped is highly relevant** to Plaintiff's claim" for disability benefits because "Plaintiff must show that the reason for the drop in his income was due to his back injury, not some other reason or reasons. Thus, other reasons for the drop in Plaintiff's income are relevant." (*id.* at p.19). Accordingly, Berkshire asks the Court to take judicial notice of various adjudicative facts pertaining to the negative publicity resulting from the murder of Plaintiff's brother-in-law and the resulting cloud of suspicion surrounding Plaintiff. The documents and facts referenced herein have been separately identified on Defendant's Trial Exhibit List and many are likely admissible on multiple bases. However, for purposes of efficiency and to streamline the trial, Berkshire asks the Court to take judicial notice of the adjudicative facts herein.

2. This is an action for residual disability benefits, where Berkshire disputes that Plaintiff is residually disabled under three disability Policies issued to Plaintiff by Berkshire.

3. Plaintiff can only recover benefits if he demonstrates that he suffered a loss of income of at least 20% because of sickness or injury and he was under appropriate medical care for his alleged disabling condition. (D.E. Nos. 83-1, at 16; 83-2, at 15; 83-3, at 14).

4. During Berkshire's investigation of Plaintiff's disability claim, Berkshire learned of negative publicity beginning in 2016 relating to the ongoing investigation of Mr. Markel's murder and Plaintiff's relationship with Katherine Magbanua, a woman who was arrested on a warrant for the first-degree murder of Mr. Markel. (D.E. No. 83-46, ¶ 14). In addition to news articles focused on the murder-for-hire plot to kill Mr. Markel, Berkshire also learned of the 20/20 program, "In-Laws and Outlaws," which aired on September 16, 2016, centering around the Adelson family's potential involvement in this plot. (*Id.*, ¶ 19). Ultimately, Berkshire was able to obtain a copy of that program on or about March 21, 2017. (D.E. No. 83-17, at 162:23-164:13).

5. Berkshire further learned of probable cause affidavits against Plaintiff and Ms. Magbanua that became public and discussed among other things, the ongoing investigation of Mr. Markel's investigation, including telephone calls between Plaintiff and his mother and with Ms. Magbanua, whose arrest contributed to the proliferation of negative publicity in 2016, and which are also part of Berkshire's claim file. During an April 20, 2016 conversation recorded by the FBI between Plaintiff and Ms. Magbanua, Plaintiff acknowledged that the murder of Dan Markel made national and international news, including the British Broadcasting News station. (**Ex. G** at 19:14-18).

6. During discovery in this action, several dentists whose patients Plaintiff had also treated testified that they stopped using his services as a periodontist because of this negative publicity that specifically referenced Plaintiff. (D.E. No. 84-2, at 52:5-59:10; D.E. No. 84-3 at 25:4-31:3; D.E. No. 117, at 1-2). Plaintiff further confirmed that he knew that Drs. Kuhl and Kaufman stopped working with him due to the publicity surrounding him. (D.E. No. 83-6, at 232:13-23).

7. The media coverage of the investigation of Mr. Markel's murder and Plaintiff's and his family's potential involvement continued after 2016. The publicity has included coverage of the first trial of Ms. Magbanua which ended in a mistrial, the second trial and conviction of Ms. Magbanua, and the conviction of Sigfredo Garcia and plea deal of Luis Rivera, the two men who travelled to Tallahassee to kill Mr. Markel.

8. Then, on April 21, 2022, Plaintiff was arrested on several charges for the murder of Mr. Markel. Plaintiff's criminal trial has been scheduled to begin on October 23, 2023.

9. Plaintiff's arrest and incarceration are relevant to his claim for benefits, as it signifies the end of any purported entitlement to benefits for any period of incarceration. The Policies specifically state:

We [Berkshire] will not pay benefits:

- during any period of time in which you are incarcerated.

(D.E. No. 83-1, at 9; D.E. No. 83-2, at 7; D.E. No. 83-3, at 7).

10. Additionally, Plaintiff's statements in the criminal case are relevant to the issues in this case because he filed an Unopposed Motion for Protective Order in which he acknowledged that "**[f]rom its inception, the investigation into the murder of Professor Markel has captured worldwide attention**, with countless books, podcasts, blogs, television specials, panel discussions, and news articles devoted to the subject." (**Exhibit H**, at 1). This statement and others are highly

probative that Plaintiff's alleged loss of income is due to the negative publicity surrounding the murder of Dan Markel, and not due to sickness or injury.

11. Accordingly, Berkshire respectfully requests that the Court take judicial notice of the following adjudicative facts and records[1] that are not subject to reasonable dispute.

    a.    On July 18, 2014, Dan Markel was murdered in his driveway in Tallahassee, Florida. *See* (**Composite Exhibit D**, Magbanua Probable Cause Affidavit, at 1).

    b.    Mr. Garcia and Mr. Rivera were arrested and charged with Mr. Markel's murder in May of 2016. *See* (**Composite Exhibit D**, Second Motion for Pretrial Release Following Mistrial, Aug. 31, 2020, ¶ 7).

    c.    In 2016, articles were published in many publications in Florida and across the United States, including but not limited to South Florida publications, relating to the investigation of Dan Markel's murder that named Plaintiff as potentially involved in the

---

[1] Berkshire has attached an index of the corresponding records which are attached as **Exhibits B through F** in this Motion as **Exhibit A**. **Composite Exhibit B** includes articles published in 2016 relating to the murder investigation of Mr. Markel and related prosecutions which likewise reference Plaintiff. **Composite Exhibit C** includes articles that were published after 2016 focusing on the negative publicity which continued to reference Plaintiff's potential involvement in the plot to hire Mr. Markel. **Composite Exhibit D** includes records filed in the criminal proceedings against Ms. Magbanua. *See also generally State of Fla. v. Magbanua*, Case Nos. 2016 CF 3036 A001, 2018 CF 497 A001, 2018 CF 497 A002, 2018 CF 000497 A001, 2018 CF 000497 A002, Circuit Court of the Second Judicial Circuit in and for Leon County, Florida. **Composite Exhibit E** includes articles regarding Plaintiff's arrest. **Exhibit F** is Plaintiff's record of arrest and probable cause affidavit filed in *State of Fla. v. Adelson*, Case Nos. 2016 CF 003036 B001, 2016 CF 003036 B002, 2016 CF 003036 B002, Circuit Court of the Second Judicial Circuit in and for Leon County, Florida. **Exhibit G** is the transcript of the recording of Plaintiff's and Ms. Magbanua's meeting on April 20, 2016. **Exhibit H** is Plaintiff's Unopposed Motion for Protective Order filed on January 10, 2023 in *State of Fla. v. Adelson*, Case Nos. 2016 CF 003036 B001, 2016 CF 003036 B002, 2016 CF 003036 B002, Circuit Court of the Second Judicial Circuit in and for Leon County, Florida.

plot to murder Mr. Markel and discussed Plaintiff's relationship with Ms. Magbanua who was also arrested for Mr. Markel's murder. *See* (**Composite Exhibit B**).

d. On September 16, 2016, a 20/20 television program aired on ABC across the United States which was titled "In-Laws and Outlaws," and focused on the relationship between Plaintiff, Ms. Magbanua, and Mr. Garcia and their potential involvement in the murder of Mr. Markel. *See* (**Composite Exhibit B,** "The ABC News '20/20' Segment on the Dan Markel Murder Case"). [2]

e. Katherine Magbanua was arrested on October 1, 2016 for her suspected involvement in the murder of Mr. Markel. *See* (**Composite Exhibit D**, Second Motion for Pretrial Release Following Mistrial, Aug. 31, 2020, ¶ 15).

f. The probable cause affidavit against Ms. Magbanua set forth law enforcement investigators' theory of Ms. Magbanua's involvement in Mr. Markel's murder: that she allegedly hired Mr. Garcia and Mr. Rivera to murder Mr. Markel in an effort for the Adelson family to obtain sole custody of Mr. Markel's and Wendi Adelson's children. *See* (*id.*, ¶ 9; **Composite Exhibit D**, Magbanua Probable Cause Affidavit).

g. The probable cause affidavit against Ms. Magbanua referred to records of telephone conversations in the weeks leading up to Mr. Markel's murder between Plaintiff and Ms. Magbanua, which coincided with records of Ms. Magbanua having contact with Mr. Garcia. (**Composite Exhibit D**, Magbanua Probable Cause Affidavit, at 6-8).

---

[2] The video of this 20/20 episode is available online. *See* "In-Laws & Out-Laws," ABCNEWS 20/20, *available at* https://www.youtube.com/watch?v=1VXWj-lDOcs (last accessed Apr. 10, 2022). In its Renewed Omnibus Motion in Limine, Berkshire has requested that it be permitted to play the video of this episode for the jury.

h. The probable cause affidavit against Ms. Magbanua also referred to a meeting between Ms. Magbanua and Plaintiff on April 20, 2016 following an undercover agent's contact with Plaintiff's mother, Donna Adelson, in reference to Mr. Markel's murder. *See* (*id.*, at 11-13).

i. Ms. Magbanua and Mr. Garcia were tried together in September 2019. (**Composite Exhibit D**, Second Motion for Pretrial Release Following Mistrial, Aug. 31, 2020, ¶ 2).

j. After a three-week trial, the jury found Mr. Garcia guilty of first-degree murder and conspiracy to commit murder, but with respect to Ms. Magbanua, the trial court declared a mistrial. *See* (*id.*, at ¶ 3)

k. Articles published in various publications after 2016 and through 2020, when Plaintiff filed the Complaint in this action, continued to reference Plaintiff's relationship with Ms. Magbanua and his potential involvement in the murder of Mr. Markel. *See* (**Composite Exhibit C**).

l. Ms. Magbanua was tried for the second time for the murder of Mr. Markel in May 2022. (**Composite Exhibit D**, Order Granting Motion for Continuance and Setting Court Proceeding Dates and Procedures, Feb. 4, 2022).

m. On May 27, 2022, the jury found Ms. Magbanua guilty of First Degree Murder, Conspiracy to Commit First Degree Murder, and Solicitation to Commit First Degree Murder. (**Composite Exhibit D**, Verdict Form). Berkshire requests that the Court take judicial notice of Ms. Magbanua's conviction.

n. On April 21, 2022, Plaintiff was arrested on several charges for the murder of Mr. Markel. (**Composite Exhibit E; Exhibit F**).

o. A number of news articles have been published as a result of Plaintiff's arrest. (**Composite Exhibit E**).

p. In the recording of Plaintiff's and Ms. Magbanua's meeting on April 20, 2016, that led to his arrest, Plaintiff acknowledged the widespread media coverage of Mr. Markel's murder and stated that "[t]his made, not only national news. This was on the … this was in London. … This was on the BBC news. … This was on Good Morning America. This was on the New York Times. This was a big story." (**Exhibit G**, at 19).

q. On January 10, 2023, Plaintiff filed an Unopposed Motion for Protective Order in his criminal case to "prevent[ ] the public disclosure of all notes, reports, memoranda, and recordings of any prior or future interviews of Katherine Magbanua conducted by the State through the conclusion of her testimony at trial should she be called to testify or, if not, through the conclusion of trial." (**Exhibit H**, at 1). Plaintiff stated "[f]rom its inception, the investigation into the murder of Professor Markel has captured worldwide attention, with countless books, podcasts, blogs, television specials, panel discussions, and news articles devoted to the subject. Every court proceeding has been live-streamed, every new development publicly scrutinized, and every piece of discovery released, much of it posted online where it becomes the focus of intense media discussion and analysis." (*id.*).

## MEMORANDUM OF LAW

Federal Rule of Evidence 201 authorizes a district court to take judicial notice of certain adjudicative facts. *See* FED. R. EVID. 201. A district court may only take judicial notice of an adjudicative fact that is not subject to reasonable dispute in that it is either "generally known within the territorial jurisdiction" of the district court or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See id.* Rule 201 "was intended

to obviate the need for formal fact-finding as to certain facts that are undisputed and easily verified." *See Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006). In order for a district court to take judicial notice of a particular adjudicative fact, "the fact must be one that only an unreasonable person would insist on disputing." *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

A court may take judicial notice of newspaper articles and other publications for the limited purpose of determining what statements those documents contain. *See United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) ("And courts may take judicial notice of documents such as the newspaper articles at issue here for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)."); *Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 401 (3d Cir. 2006) (affirming district court taking judicial notice of articles which "serve[d] only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true"); *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999) ("We take judicial notice that the market was aware of the information contained in news articles submitted by the defendants."); *Rodriguez v. Bear Stearns Companies, Inc.*, No. 07-CV-1816 (JCH), 2009 WL 995865, at *12 (D. Conn. Apr. 14, 2009) ("The court takes judicial notice of the existence, publication, and/or availability of certain news articles and annual reports as requested by the defendants, but does not take notice of the truth of the matters asserted in those articles and reports.") (citing *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 424 (2d Cir. 2008)); *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) ("Pursuant to Rule 201(b), Courts have the power to take judicial notice of the coverage and existence of newspaper and magazine articles.").

Accordingly, the Court may take judicial notice of the articles attached as **Composite Exhibits B** and **C** that demonstrate the existence of widespread media coverage in 2016 which continued throughout 2020 regarding the investigation of Mr. Markel's murder and which referenced Plaintiff's potential involvement in the plot to murder Mr. Markel, Plaintiff's relationship with Ms. Magbanua, the various arrests for the murder of Mr. Markel in 2016, and the trials of Ms. Magbanua and Mr. Garcia. Indeed, Plaintiff himself acknowledged this widespread national and international publicity in the April 20, 2016 recording which led to Plaintiff's arrest and of which the Court may also take judicial notice. *See* **Exhibit G**. The Court may also take judicial notice of the media coverage of Dr. Adelson's arrest. *See* **Exhibit E**. Furthermore, the Court may take judicial notice of the fact that the 20/20 episode, "In-Laws and Outlaws," aired on ABC on September 16, 2016, and also specifically refers to Plaintiff as potentially involved in the plot to murder Mr. Markel. *See Turner v. Wells*, 879 F.3d 1254, at *1272, n.5 (11th Cir. 2018) (taking judicial notice of the existence of videos produced or articles written about Coach Turner, including those featured in the 2012 season of the HBO program "Hard Knocks").

Additionally, the Court may take judicial notice of the adjudicative facts contained in the state court docket of Ms. Magbanua's and Plaintiff's criminal proceedings as discussed above, including Ms. Magbanua's conviction and the date of Plaintiff's arrest. *See Grayson v. Warden, Comm'r, Alabama Doc*, 869 F.3d 1204, 1225 (11th Cir. 2017) (noting that a court may take judicial notice of filings in other litigation); *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651-52 (11th Cir. 2020) (finding that it was appropriate to take judicial notice of online state court dockets); *Turner v. Wester*, No. 5:20cv199-MCR-MJF, 2021 WL 1564324, at *3, n.1 (N.D. Fla. Apr. 21, 2021) (taking judicial notice that arrests in several of the cases listed in the Complaint are alleged to have occurred on a date prior to the plaintiff's arrest). The Court may also take judicial notice

of Plaintiff's statements in his Unopposed Motion for Protective Order filing in his pending criminal proceeding. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (a court may properly take judicial notice of the statements publicly filed documents contain). Additionally, the Court may take judicial notice of the April 20, 2016 transcript of the meeting between Plaintiff and Katherine Magbanua, in which Plaintiff acknowledged the widespread media coverage of Mr. Markel's murder, as the state attorney who prosecuted Ms. Magbanua made the transcript is publicly available and not subject to reasonable dispute. (**Exhibit G**, at 19). *See Henderson v. Sun Pharmaceuticals Industr., Ltd.*, 809 F. Supp.2d 1373 (N.D. Ga. 2011) ("The court is permitted to take judicial notice of documents made publicly available by a government entity); *see also* WCTV, *State attorney releases transcript from 2016 Adelson-Magbanua conversation at Miami restaurant*, available at https://www.wctv.tv/2022/04/21/state-attorney-releases-transcript-2016-adelson-magbanua-conversation-miami-restaurant/ (last accessed Sept. 8, 2023).[3]

### III. CONCLUSION

For the above reasons, Berkshire's Renewed Motion for Judicial Notice should be granted.

### Local Rule 7.1 Certification

Counsel for Berkshire conferred with Counsel for Plaintiff, who objected to Berkshire's requests for relief set forth in this Renewed Motion.

---

[3] Although ordinarily the Court made not take judicial notice of adjudicative facts for the truth of the matter asserted, the statements made by Plaintiff in the April 20, 2016 transcript and the Unopposed Motion for Protective Order are independently admissible for the truth of the matter asserted as an admission by a party opponent. *See Walker v. Darby*, 911 F.2d 1573, 1578 n.2 (11th Cir. 1990) (Admissions by party opponents are admissible non-hearsay pursuant to Fed. R. Evid. 801(d)(2)).

Dated: October 10, 2023

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax

By: ___/s/ Wendy L. Furman_____
WENDY L. FURMAN
Fla. Bar No. 0085146
wendy.furman@mhllp.com
DANIELLE S. PLOSHNICK
Fla. Bar No. 118911
danielle.ploshnick@mhllp.com

*Thomas F.A. Hetherington, Esq.
McDowell Hetherington, LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
(713) 337-5580
tom.hetherington@mhllp.com
*Admitted Pro Hac Vice

# CERTIFICATE OF SERVICE

I certify that on October 10, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Benjamin C Hassebrock, Esq.
Alexander Irimia Loy, Esq.
Ver Ploeg & Marino, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33134
305-577-3996
bhassebrock@vpm-legal.com
aloy@vpm-legal.com
*Counsel for Plaintiff*

/s/ Wendy L. Furman_____
Wendy L. Furman